## Henry C. Suttle v. David Kabacker.

1. EVIDENCE—*Where Conflicting.*—Where the evidence is conflicting the opportunities of the trial judge for passing upon the credit to be given to the witnesses is superior, and this court does not feel warranted in saying that he reached a wrong conclusion.

Assumpsit, on a promissory note. Appeal from the Circuit Court of DeWitt County; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 2, 1898.

E. J. SWEENEY and MOORE, WARNER & LEMON, attorneys for appellant.

GEORGE K. INGHAM, attorney for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

In January, 1896, appellee, who had been in the retail clothing business at Kenney, Illinois, contracted with appellant for the sale of his stock of goods at seventy-five per cent of the cost price. An invoice of the goods was taken as agreed upon, which showed the cost price, less twenty-five per cent, amounted to $3,369; whereupon appellant executed and delivered to appellee his three promissory notes, due in one year, one for $1,369 and two for $1,000 each, and appellee delivered the goods to him. A payment of $2,000 was made shortly after the note matured. This suit was brought to recover the balance. A defense was interposed to the effect that just before the invoice was taken the cost price of all the goods, except as to three hundred dollars' worth, was marked up twenty-five per cent by appellee, thereby making the purchase price to appellant twenty-five per cent greater than it should have been, and that the consideration of the notes had failed to that extent. A trial was had upon that issue by the court, a jury being waived, and a judgment rendered against appellant for $1,412.57, the balance due on the notes as principal and interest. We are asked to reverse the judgment for the sole reason that it is not supported by the evidence.

The chief reliance of appellant to make out his defense was the testimony of one W. H. Bowren, a man who, up to the time of the sale, had been a clerk in appellee's store. He testified that a few days before the invoice was taken appellee marked up the cost price of the goods twenty-five per cent; that the manner by which they were marked up was by scratching out the letters on the tickets attached to each piece of clothing that indicated the cost price and substituting in their stead other marks or letters; that appellee at the time of taking the invoice had on hand the original bills showing the cost price of the goods, and that they were burned by him under the direction of appellee. He testified that the goods were invoiced to appellant at the raised cost mark; that when appellant demanded of appellee the original bills and was told by him that he had destroyed them but would procure duplicates, that he, the witness, at the instance of appellee, wrote a letter to Kohn Brothers, a firm in Chicago from whom the goods had been purchased, for duplicate bills, and requested that the cost price in the duplicates be raised twenty-five per cent; that the duplicates, raised as requested, were received from Kohn Brothers, and that they were turned over to appellant. In all the essential features of his testimony relating to the alleged fraud of the transaction this witness was contradicted by appellee. Aside from their testimony there was but little else upon this, the frictional question in the case. To the trial judge it was a question of veracity between these two witnesses. His opportunities for passing upon the credit to be given to their testimony were superior to ours, of course, and we should not feel warranted in saying that he had reached a wrong conclusion unless appellee was in some manner impeached, or there were circumstances developed upon the trial corroborating Bowren and showing that appellee was unworthy of belief.

A careful scrutiny of the testimony of Bowren does not favorably impress us with him as a witness. He is a self-confessed participant in an attempt to defraud appellant. He knew the original bills had been destroyed, because he had burned them. According to his testimony he knew

that Suttle was becoming suspicious and had demanded the original bills; and yet he wrote for fraudulent duplicates to aid appellee in his attempt to swindle appellant. He testified that the cost price was marked up on the goods as preliminary to offering them at public auction. We can understand why a merchant might want to mark up the selling price of goods which he was about to offer at auction, but can not see what advantage there would be in changing the secret marks indicating the cost price. It is a matter of common knowledge that cost price marks are for the information of the merchant and his salesmen and not for the public.

If changes on the tickets were made in the manner testified to by Bowren, by scratching out the original letter marks and substituting new ones on some five hundred pieces of clothing, we can not but think evidence of such change would have appeared from an inspection of the tickets. But none of the tickets were produced in evidence. Nor was Mr. Wright, into whose charge the goods were placed and remained for more than a year, examined as to changes on the tickets. If the duplicate bills from Kohn Brothers were raised, as testified to by Bowren, an examination of the books and bookkeeper of that firm would have shown the fact; but there was no effort to make proof in that direction.

We see no reason for reversing the judgment of the Circuit Court. Judgment affirmed.